### BOB HINES v. THE STATE.

*No. 717.     Decided March 24th, 1897.*

**1.   Impeachment of Witness—Statements Before Grand Jury.**

Whenever necessary to a due administration of justice, a witness may be attacked by showing that he made statements before the grand jury different from those testified on the trial of the case.

**2.   Same—Construction of Statute.**

Code Crim. Proc., Art. 404, prescribing the oath of grand jurors, as part of the same makes the proceedings had before them secret unless the grand jurors are "required to disclose the same in the course of a judicial proceeding in which the truth or falsity of evidence given in the grand jury room in a criminal case shall be under investigation;" and Art. 213, Penal Code, punishes a witness for divulging proceedings in the grand jury room unless he is "required to testify to any of such matters before a judicial tribunal." Held: A proper construction of the statutes limits the testimony permitted as to matters transpiring in the grand jury room to such cases only where the same matter is under investigation both in the grand jury room and the trial court.

**3.   Same.**

A witness cannot be impeached by showing that he testified falsely in the grand jury room as to other matters not germane to the investigation before the trial court.

**4.   New Trial—Newly Discovered Evidence.**

See, facts, on a trial for violating local option, stated in the opinion, upon which it is Held, that a new trial should have been granted for the newly discovered evidence.

APPEAL from the County Court of Dallas.    Tried below before Hon. T. F. NASH, County Judge.

Appeal from a conviction for violating local option; penalty, a fine of $25, and twenty days' imprisonment in the county jail.

The opinion states the case, and also states the matters pertaining to the impeachment of the witness, Gus Lindsey, by his statement made when a witness before the grand jury.

*Thomas & Turney*, for appellant.

*Mann Trice*, Assistant Attorney-General, for the State.

DAVIDSON, JUDGE.—Appellant was convicted of violating the local option law in the town of Lancaster, in Dallas County; hence this appeal. The indictment charges appellant with having sold intoxicating liquors to one Gus Lindsey. On the trial, the State introduced one T. J. Watts, who testified that he gave Gus Lindsey 25 cents in silver, with which to purchase whiskey; that Lindsey took ·the money, and went into a butcher's shop, where appellant was employed; that he went into an adjoining establishment, and from his position saw Lindsey purchase the whiskey from appellant with the 25 cents, and that Lindsey subsequently brought him (Watts) the whiskey. This was the testimony introduced by the State with reference to the sale of the whiskey. The defendant placed on the stand as a witness the alleged purchaser, Lindsey, who denied Watts' entire statement, swearing positively that Watts did not furnish him with any money with which to buy whiskey, and that he (Lindsey) did not purchase of appellant any whiskey at any time "during his life." For the purpose of impeaching Lindsey, the State introduced Holland, a member of the grand jury in session at the time of this trial, and asked him "whether Gus Lindsey had just been before the grand jury, and there testified that, if he were connected with or had any friend involved in any violations of law, he would not give it away." To this appellant objected. The court overruled the objection, and required the witness to answer that "Lindsey had just been before the grand jury, and there testified that he would not give away a friend in legal trouble, or to that effect." By another bill of exceptions it is also shown that while Lindsey was on the stand as a witness he had been questioned with reference to this matter, and stated in reply that he said to the grand jury, "that he would not criminate himself, but that he did not remember making the statement asked about and as testified to by Holland." Article 404, of the Code of Criminal Procedure sets forth the oath administered to grand jurors, which requires them to keep secret all the proceedings had before them, unless the grand jurors are "required to disclose the same in the course of a judicial proceeding in which the truth or falsity of evidence given in the grand jury room in a criminal case shall be under investigation." Article 213, Penal Code, prescribes the punishment for grand jurors and witnesses who divulge the secrets of the grand jury, "unless such persons are required to testify to any of the matters before said grand jury

in a judicial tribunal." It has been held in this State, since the case of Clanton v. State, 13 Tex. Crim. App., 139, that, whenever it is necessary to the due administration of justice, a witness may be attacked by showing he made statements before the grand jury different from those testified on the trial of the case. There is an unbroken line of decisions in this State, beginning with said Clanton's case, supra, affirming this doctrine; but an inspection of those cases will show that this character of testimony was permitted only when the same matter was under investigation both before the grand jury and the trial court. A proper construction of these statutes will limit this rule to the character of cases mentioned. It has never been held that the witness can be impeached in the trial court by showing that he made statements with reference to other matters which would tend to impeach him, or show his unworthiness of credit. In other words, as we understand the statutes referred to, when the witness is sought to be impeached by showing the statements made before the grand jury, they must relate to the same matter under investigation before the trial court. It will not do to hold that, because the witness may have testified falsely about some other matters before the grand jury, therefore you can impeach him by proving that he made such statements in regard to other matters not germane to the investigation before the trial court. On motion for new trial, appellant presented the affidavit of Dr. R. E. Taylor, to the effect that he was personally acquainted with Watts, had known him for eight or ten years, and in the opinion of the witness said Watts was non compos mentis; that he had practiced in his family, and on the witness himself, and is positive as to his being of unsound mind; and his insanity seems to be of a periodical nature, but he is never rational at any time; and his acts, and the opinion of those who know him, verify the opinion of the witness that said Watts is of unsound mind. By the affidavit of C. C. Fisher it is shown that about February 13, 1895—about six days after the trial of this case—this same witness (Watts) had a long conversation with affiant, in which he told affiant that appellant was not guilty of selling whiskey for which he was convicted in this case; that one Carver was the man who sold the whiskey to Lindsey, and not the appellant; that he (Watts) knew that fact, but that he had contracted with certain parties to furnish the evidence, and testify against and convict appellant and one Dave Waters for selling whiskey; that the contract price to be paid him was $60; that they had only paid him $11 of said amount, and he was having trouble to get the balance; that if he did not get the balance of said money by the day after to-morrow from that day, he would expose the whole matter to this affiant, naming the parties who promised to put up the money. Watts further said in that conversation that if appellant secured a new trial he would go on the witness stand, and swear that Carver, and not appellant, sold the whiskey; and, if the parties who had promised to pay him the $60 failed to do so, he wanted affiant to see if Waters and Hines would not furnish him money to leave

the country on, which affiant refused to do.   By the affidavit of J. W. Anderson it is shown that the witness, Watts, had a conversation with him in the rear end of Scobb's drug store, in which Watts said, "I reckon you know my evidence convicted Bob Hines," and affiant replied, "Yes, I have heard so."   Then Watts said: "Well, I was to be paid fifty dollars for that evidence, but only eleven dollars has been paid, and I want you to go and see the good citizens of Lancaster, and see if they will contribute anything, for my expenses have been more than I got out of it.   You will know who to approach."   Affiant asked said Watts who promised the money, but he did not disclose who had so promised.   Affiant then told Watts he would not comply with his request; and Watts asked him to say nothing about it, and the conversation ended.   These affiants all live in the Lancaster neighborhood.   The State filed no controverting affidavits, nor in any manner denied or controverted the statements set out in the affidavits of the witnesses, Taylor, Fisher and Anderson.   These affidavits set up the facts to be newly discovered.   If the affidavits of Fisher and Anderson are true, the evidence was evidently newly discovered, because it occurred some days after the conviction of appellant; and, if true, was of a most material character.   Under the circumstances of this case, a new trial should have been awarded appellant on this ground.   For the reasons indicated, the judgment is reversed and the cause remanded.

*Reversed and Remanded.*