GEORGE BROWN v. THE STATE.

No. 1914. ˙ Decided June 29, 1900.

**1. Joint Defendants—Severance—Dismissal of Prosecution.**

When the case was called for trial defendant made a motion, in strict compliance with the statute, for a severance from his codefendant S., whose testimony he desired. In answer to this motion the prosecuting attorney stated that the State would either use S. as a witness and defendant could then cross-examine him or would dismiss the prosecution as to said S., and defendant could then, if he desired, use him as a witness. The motion to sever was overruled. S. was not called as a witness by the State, but when defendant proposed to call him as a witness, the district attorney dismissed the case as to him and he was sworn and testified as a witness for defendant. Held, the action was legal

and defendant could not be heard to complain, inasmuch as he had the benefit of the codefendant's testimony. Henderson, J., dissenting.

**2. Same—Renewal of Prosecution After Dismissal.**

Where the prosecuting attorney has, with consent of the court, dismissed the prosecution as to a joint codefendant from whom defendant on trial has sought a severance, and the defendant on trial has used him as a witness, the defendant on trial after a conviction and on motion for new trial can not be heard to complain that a new prosecution, or renewal of the old one, has been instituted against said codefendant whose case had been previously dismissed.

**3. Same—Construction of Statutes.**

Article 707, Code of Criminal Procedure, with regard to severance by joint defendants, must be construed in connection with articles 37 and 709, Code of Criminal Procedure, giving the district or county attorney the right to dismiss the prosecution as to one or more joint defendants with consent of the court.

**4. Same—Evidence—Testimony of Joint Codefendant Whose Case Has Been Dismissed.**

Where the defendant had moved for a severance, and the prosecution was dismissed as to the codefendant, whose testimony was desired, and said dismissed codefendant has become a witness for defendant on trial, it is both competent and material as evidence to prove by such witness that the district attorney had promised him immunity from prosecution if he would go on the stand and swear the whole truth, and that the witness had replied that he "would only swear the truth and nothing more."

**5. Improper Argument of Counsel—Practice on Appeal.**

Objections to improper argument of counsel will not be considered on appeal when defendant did not ask the trial court to instruct the jury to disregard such argument.

**6. Testimony Before Grand Jury—Use of.**

The testimony of a witness taken before the grand jury is admissible solely where the truth or falsity of the witness is in question. It can not be used by the State for the purpose of impeaching its own witness. It can not be used as a predicate for the introduction of impeaching testimony. It can not be used for the purpose of intimidating the witness. And where its inspection has been refused to the use of defendant and his counsel it can not be used as the basis for the cross-examination of one's own witness.

**7. Theft of Cattle—Accustomed Range—Charge.**

On a trial for cattle-theft, where it appeared that the alleged stolen animal was taken from the pasture of P., which adjoined the pasture of the alleged owner, and that the latter's cattle were frequently in P.'s pasture, it was not error for the court to refuse to give a requested instruction as to the animal's accustomed range.

**8. Same—New Trial—Newly Discovered Testimony.**

On a trial for cattle-theft where defendant's witnesses are directly contradicted and impeached by a State's witness as to a most material fact in the case, and said impeaching witness makes affidavit in connection with defendant's motion for new trial, that he, the witness, was mistaken as to this important fact; Held, his testimony should be considered as newly discovered, and the new trial should have been granted.

Appeal from the District Court of Frio. Tried below before Hon. M. F. Lowe.

Appeal from a conviction of cattle-theft; penalty, two years imprisonment in the penitentiary.

The indictment charged appellant alone with the theft of cattle, the property of W. J. Slaughter.

One Tom Sharp was by another separate indictment charged with

the theft of the same animal. When this case was called for trial appellant made a motion, in conformity with the statute, for a severance for the purpose of having the said Tom Sharp first tried. When defendant presented this motion, the district attorney announced that he would either use Sharp as a State's witness or would dismiss the indictment against him so that defendant might use him as a witness. Thereupon the court overruled defendant's motion for severance. The district attorney did not use Sharp as a witness for the State, but, after closing the State's testimony, dismissed the indictment against him, and defendant called Sharp as a witness and Sharp testified in his behalf. After defendant's trial and conviction, the district attorney caused Sharp to be rearrested for the same offense. Defendant excepted to the action of the court in· overruling his motion for severance, and, on his motion for new trial filed the affidavit of Sharp to the effect that he, Sharp, had been rearrested for the same identical offense since defendant's conviction.

The defense was, that the animal killed by defendant and Sharp was not the property of Slaughter as alleged in the indictment, but was in fact the property of one I. T. Pryor, the party in whose employment both defendant and Sharp were engaged at the time; and that it was killed in the pasture of Pryor and not in the accustomed range of Slaughter's cattle. The evidence showed that the respective pastures of Pryor and Slaughter adjoined each other and that the cattle from one pasture were frequently found in the other. When the defendant placed Tom Sharp as a witness upon the stand after the dismissal of the case as to said witness, the court refused to permit the defendant to prove by this witness that the district attorney had promised said witness that if he would go upon the stand and swear to the whole truth, he, the district attorney, had the power and would dismiss his, Sharp's case, and would not prosecute him; and that Sharp had replied he would only swear the truth and nothing more.

During the progress of the trial, the witness Melvin Cude, being on the witness stand, the district attorney drew from his pocket a certain paper and asked the witness to examine and read it, and whether his signature was to the paper. Defendant's counsel asked that they might be permitted to examine the paper, and this was refused by the court. They then demanded that the whole of the paper should be read, and this was refused. The district attorney then began examining the witness from the paper, asking the witness questions therefrom, leading in their character, claiming that the paper contained the testimony of the witness taken before the grand jury; but both the court and the district attorney refused to permit defendant's counsel to examine the paper. Counsel objected to the witness being examined from said paper unless they had an opportunity to examine same, and because the questions asked therefrom were leading, and because the paper was being used to intimidate the witness, and because there might be something

in the paper beneficial to the defendant, and because if said paper contained secrets of the grand jury as claimed by the district attorney and the court, the same had already been revealed by the use of same by the district attorney in asking question. All of these objections were overruled and the district attorney permitted to examine the witness from said paper, asking him the questions set out in defendant's bill of exceptions. By qualification to this bill the district judge gives as a reason for admitting the testimony, that the witness Cude had been or was evading the questions of the State and was an unwilling witness, and that under said circumstances the court permitted the State to ask leading questions and to cause him to read over his testimony given before the grand jury to refresh his memory and after he had read same to question him upon his memory of same after the paper had been taken from him, and without permitting him to see or read the paper while answering same.

As shown by the testimony, the witnesses Vinton and Saltillo had both testified for the defendant to the effect that they were present when Brown and Sharp roped the yearling and that it was not a Diamond T yearling as claimed by the State, but a V bar yearling as claimed by the defendant. To overthrow the force of this testimony, the State showed by the witness Melvin Cude that he took dinner with these two witnesses at a point some miles distant from where the animal was roped at the time when these witnesses claimed they were present at the roping. This testimony, if believed by the jury, would, of course, destroy the testimony of the witnesses Vinton and Saltillo.

After the verdict of guilty, the witness Cude made an affidavit substantially to the effect that upon mature reflection he was satisfied that he was mistaken in his testimony with reference to the day upon which he took dinner with the said witnesses Vinton and Saltillo, and that he never in fact took dinner with them on the day mentioned in his testimony, but that it was on a different day.

The defendant moved for a new trial upon the ground, among others, that the testimony of Melvin Cude on the trial had been very injurious to the defendant; that it now developed that the witness was mistaken in his testimony, and that defendant should have the benefit of Cude's testimony showing the real facts. The affidavit of Cude was attached to the motion for a new trial and made a part thereof.

*Denman, Franklin, Cobb & McGowan, J. T. Bivins, T. P. Morris,* and *W. A. H. Miller,* for appellant.—The court erred in refusing to place Sharp, who had been indicted for the same offense charged against defendant, on trial, first, upon the sworn application of the defendant conforming in every respect to the statutes. This action of the court was taken upon the statement of the district attorney that he intended

to use Sharp as a witness, and that if he did not, his case would be dismissed.

As we understand the statute, it was intended to give to the defendant the right to secure the testimony of a codefendant, or one charged with the same offense in separate indictment, by having such other first tried and acquitted, so that he might obtain the testimony of such other freed of the danger of a further prosecution against such other. The presence of such danger might seriously affect the testimony of such other. It may be true that if the State, realizing the weakness of its case, dismisses the indictment against such codefendant in good faith with no view to a further prosecution that the spirit of the statute is complied with; but where the sole purpose of the dismissal is to force the defendant to be tried first and to force him either to go without the testimony of his codefendant or to place him upon the witness stand menaced with a further prosecution, neither the spirit nor the letter of the statute is complied with, and the power is left in the district attorneys to deprive a defendant of the full benefit of the provisions of the statute at their will.

The court erred in refusing to permit the defendant to show by the witness Tom Sharp when said witness was placed upon the witness stand by the defendant that the district attorney, C. A. Davies, had promised said witness that if he would go upon the stand and swear to the whole truth, he, the district attorney, had the power to and would dismiss Sharp's case and would not prosecute him, and that Sharp had replied, that he would only swear to the truth, and nothing more.

The court erred in refusing to grant defendant's motion for a new trial wherein it is made to appear to the court that after the conviction of the defendant, the district attorney caused the witness Sharp to be rearrested upon an affidavit charging him with the same offense charged against him in the indictment pending against Sharp at the time that defendant's application to have Sharp first tried was made. It being made to appear from said motion and the affidavit of Sharp attached thereto and from the testimony of the district attorney in the statement of facts that the dismissal of the case against Sharp was not a good-faith dismissal, but was made solely for the purpose of avoiding the defendant's application to have Sharp placed first on trial. With regard to the error committed by the court in refusing to permit defendant's counsel to examine the testimony taken before the grand jury of the witness Melvin Cude, they cited Phillips Evidence, section 400; 1 Greenleaf on Evidence, sections 436, 466. The indictment charged that the animal was taken from the witness Slaughter. Upon the testimony, that the animal was not in its accustomed range, the defendant asked a special charge to the effect that if the jury believed from the evidence that the animal was not in its accustomed range, but in the possession of another person than the said Slaughter, that then the taking would not be from the possession of said Slaughter, and there would be a

variance between the indictment and the proof and they should acquit the defendant. This charge was refused by the court and we respectfully submit that this refusal was error. Clash v. State, 23 Texas Crim. App., 612; Diggs v. State, 7 Texas Crim. App., 359; Littleton v. State, 20 Texas Crim. App., 168.

The court erred in not granting defendant's motion for new trial upon the affidavit of Melvin Cude to the effect that he had made a mistake as to his testimony given on the trial. [This matter is shown in the statement of the case.—Reporter.] Mann v. State, 44 Texas, 642; Brown v. State, 13 Texas Crim. App., 59.

*Rob't A. John,* Assistant Attorney-General, for the State. [No brief for the State found in the record.—Reporter.]

BROOKS, JUDGE.—Appellant was convicted of theft of cattle, and his punishment assessed at confinement in the penitentiary for a term of two years; and he prosecutes this appeal.

Appellant was jointly indicted with one Tom Sharp for the theft of the yearling in question. On the trial appellant filed his affidavit under article 707, Code of Criminal Procedure, for a severance, claiming there was not sufficient evidence against his codefendant, Sharp, to secure his conviction; and that he desired him tried first, for the purpose of securing his evidence. The district attorney objected to said motion for severance, stating that the State would use Sharp as a witness, and defendant could cross-examine him; if the State should not use said Sharp as a witness, the defendant would be permitted to use him. On this statement of the district attorney the court refused to put Sharp on trial first, but put appellant on trial, without at the time dismissing as to Sharp. Afterwards, and during the trial, the State closed its testimony without putting Sharp on the stand, or dismissing the case as to him. Appellant then proposed to put Sharp on the stand as a witness on his behalf, and the district attorney dismissed the case as to him, and he was sworn and testified. The court, in explaining this bill, says, "The State had the right to dismiss as to Sharp under the law, and there was no injury to defendant, Brown." There are other bills of exception involving this matter that had as well be stated here, as all of them together bring in review the legality of the action of the court overruling appellant's motion to sever. When the witness Sharp was on the stand, defendant offered to prove by him that the district attorney promised him, if he would go on the stand and swear the whole truth, that he had the power and would dismiss Sharp's case, and not prosecute him; that Sharp replied he would only swear the truth, and nothing more. Counsel for State objected to this, and the objection was sustained; and counsel for appellant excepted to the action of the court on the ground that said testimony, considering the

statements of the witness, was material, as showing his innocence of the charge; and that he maintained his innocence notwithstanding the proffer of the district attorney. Appellant also objected to the closing argument of the district attorney, as follows: "Counsel for defense has told you that Tom Sharp's case has been dismissed, and that he will not be prosecuted for this offense, and can not possibly have any motive to swear falsely,—simply to shield George Brown, his indicted codefendant, who is now upon trial. Now, gentlemen, I know of no legal reason, if George Brown is convicted, why Tom Sharp will not be prosecuted, and also convicted, for this same offense." To which counsel for defendant objected on the ground that the case of Tom Sharp had been dismissed, and his evidence was free from the ban of suspicion; and that it was incompetent for the State in the closing argument to urge before the jury that he could and would be prosecuted for this same offense; that such remarks reflected upon the credibility of said witness; and, further, because said defendant, Brown, by his motion to sever and have Sharp tried first, was entitled under the law to have said testimony of said witness free from every ban of suspicion to swear falsely, which he would have done had Sharp been put upon trial and acquitted, and had the State not been permitted to evade the statute by a formal dismissal of the case against Sharp, the aforesaid witness." Appellant also, in his motion for new trial, files the affidavit of Tom Sharp to the effect that since the trial and conviction of appellant the district attorney has caused him to be rearrested on the same identical charge that had been dismissed against him, and shows in that connection that the reasons assigned for the dismissal of said cause were as follows: "Dismissed under article 709, Code of Criminal Procedure, for the purpose of allowing this defendant to be used as a witness in the trial of cause No. 802, and in compliance with the district attorney's announcement in said cause No. 802 at the opening of said trial." As stated before, we have thought proper to here state fully all that transpired in the court with reference to the witness Sharp, and the action of the court on the application of appellant to sever and try Sharp first.

Under the provisions of article 709, Code of Criminal Procedure, "the attorney representing the State may at any time under the rules provided in article 37, dismiss a prosecution against one or more defendants jointly indicted with others, and the person so discharged may be introduced as a witness by either party." In the course of the trial of one of several defendants who were jointly indicted for murder and had severed in their defense, the district attorney has power to call up the case of any one of the defendants, and enter a nolle prosequi, for the purpose of making him a witness against defendant on trial. We find no case controverting this proposition, and the same was announced as the law as far back as Johnson v. State, 33 Texas, 570. It appears

from the foregoing statement that the district attorney dismissed the prosecution against Sharp. There is nothing in the provisions of article 709 and article 37 that places any character or kind of limitation upon the right of the judge, upon proper application made by the district attorney, to dismiss a prosecution against any defendant against whom an indictment may be pending. It is a well known rule of statutory construction that all the provisions of the Code of Procedure must be considered as a whole; and articles 37 and 709 must be construed together with article 707. In other words, article 707 is not a provision thrown into the procedure that can or should receive an independent construction regardless of the other provisions. Then we have the matter in this shape: Appellant complies with article 707, and asks that his codefendant be tried first, and that the testimony of said party is material for the defense of affiant, and affiant verily believes there is not sufficient evidence against the codefendant to secure his conviction. The moment the district attorney dismissed the prosecution, that moment defendant was entitled to the testimony of the witness Sharp. Why not? There is no prosecution pending against him. Does the bare fact that he once had an indictment against him, and that he might be reindicted, force the State to the necessity of trying a party against whom there is not sufficient evidence? The affidavit for severance itself states there is not sufficient evidence against Sharp to convict. The State concedes that fact, and dismisses the case against codefendant Sharp. We can not presume that the officers of this State act corruptly, nor can we presume that the dismissal of a case would be done for other than proper purposes. But if it has been so done,— and there is nothing in the record here to show that fact,—then the witness is placed in as good position as appellant can demand under the laws of this State. The State made no contract not to prosecute him; and, if it did, this would be a contract the witness himself could insist upon being carried out in good faith. Appellant is not in the attitude to complain of the matter. Therefore the mere fact that the witness, at one time codefendant with appellant, subsequent to the trial and conviction of appellant, was indicted, is no argument whatever in behalf of appellant; nor does it show that the right of severance has been violated. If appellant's position is correct, it would present a very anomalous condition. The record shows appellant was indicted with the witness Sharp for the theft of a yearling. The district attorney honestly states in writing to the court that he can not secure a conviction against defendant Sharp. Upon this statement the court dismisses the case. This is clearly within the spirit and letter of article 709. Nor has appellant any right to complain in the premises, since he secured the testimony of the witness Sharp. Suppose it should develop after the trial of appellant that divers and sundry witnesses knew facts going to prove conclusively that codefendant Sharp was

guilty, could appellant in this case be heard to say that the State could not reindict Sharp? Certainly not. We know of no law that guarantees a defendant that any witness should have the ban of a prosecution altogether and absolutely removed from said witness. When a defendant is not guilty, or if the evidence is not sufficient to secure conviction, the district attorney is in honor and in law bound to dismiss the prosecution; and this right is not dependent or contingent upon any right of another or anyone's interest; and, having availed himself of the provisions of the statute in doing this, the district judge and attorney are not to blame, nor can their action in the premises be called in question under the provisions of article 707, as appellant has attempted to do. It is seriously insisted that the district attorney, by this process, can hold the sword of Damocles over the head of the witness testifying, and thereby deprive appellant of the free and untrammeled testimony of the witness Sharp. This is no argument against the condition, nor is it a reason for the abrogation of article 709. If the witness Sharp has guilty knowledge of the theft of the yearling, either as principal or an accomplice, this guilty knowledge would probably deter him from telling the truth about the matter, whether indicted or not. If the prosecution is dismissed against him, he is presumed to have some sense of shame left; and it does not occur to us that he would readily agree to publish his own moral degradation; and appellant would have as much right to be relieved from the latter as he would from the prosecution. In King v. State, 35 Texas Criminal Reports, 472, as to a similar question, we used this language: "This view of the question is settled by article 91, Penal Code, which reads: 'Persons charged as principals, accomplices or accessories, whether in the same indictment or by different indictments, can not be introduced as witnesses for one another; but they may claim a severance, and if any one or more be acquitted, they may testify in behalf of the others.' Here is a provision against their testimony before acquittal or nolle prosequi; and a provision that they may testify upon the severance; and this provision applies to all persons charged, whether as principals, accomplices, or accessories, or whether charged in the same indictment or in separate bills." This, as we understand, is a clear recognition of the right of the State to dismiss the prosecution, and the relative right of appellant to avail himself of said dismissal, and have the testimony of his codefendant in his trial. In Shaw v. State, 39 Texas Criminal Reports, 174, instead of dismissing the prosecution when application for severance was filed, the district attorney stated that he would permit the codefendant to testify; and it appears from an inspection of the case that the prosecution was not dismissed against him. We think the principle laid down in the Shaw case was correct,—that this should not be done. Whenever the application for severance is filed, two alternatives are open,—grant the request, else dismiss the prosecution, so appellant can secure the testimony. But certainly such dismissal must not have

coupled with it a contract never, under any circumstances or conditions, to reindict the party whose case is dismissed. The party whose case is dismissed can not ask this right. Then how can another party, interested only in his testimony, demand this right? Appellant offered to prove by witness Sharp, who had been indicted for the same offense with appellant, and against whom the prosecution has been dismissed, that the district attorney promised him, if he would go on the stand and swear the whole truth, that he had the power and would dismiss Sharp's case, and not prosecute him; that Sharp replied he would only swear the truth, and nothing more. We think this testimony was material, and the court erred in refusing to admit the same, as going to show the innocence of witness, and to that extent would exculpate him from any suspicion, or any guilty participation in the theft, thus rendering him more credible before the jury.

Appellant also complains of the remarks of the district attorney, but, as no special charge was presented asking the court to instruct the jury to disregard it, the same can not be reviewed.

Appellant complains that the court should have given the charge on accomplice testimony as to the witness Sal Armstrong. Without reviewing the evidence indicating Armstrong is an accomplice, we think appellant's contention is correct, and the court should have given this charge.

The examination of the witness Melvin Cude was unauthorized. Testimony taken before the grand jury is admissible solely where the truth or falsity of the witness is in question. In Spangler's case, 41 Texas Criminal Reports, 424, while we held it was not reversible error to use the grand jury testimony for the purpose of refreshing a witness' recollection, still the method pursued in that case was improper. In this case, as is well said by counsel in their brief: "If the State used the paper for the purpose of impeaching its own witness, this was improper. If counsel used the paper for the purpose of testing the memory of the witness with the view of impeaching his testimony, this was improper. If he used the paper to intimidate the witness, this was improper. If he used the paper as the basis of the cross-examination of his own witness, yet refused the use of the paper to the defendant and his counsel, this was improper." Evidently the paper in question was used for some or all of these purposes.

We do not think the court erred in refusing to give the requested charge as to the animal being in its accustomed range. The testimony showed that the alleged stolen animal at the time was in the pasture of Pryor; but it also showed that Slaughter's cattle, whose pasture adjoined Pryor's, were frequently in the latter's pasture, and said pasture might be regarded as the range of the alleged stolen animal.

It further occurs to us that a new trial should have been granted, under the peculiar circumstances connected with the testimony of the

witness Melvin Cude. The witnesses Vinton and Saltillo both testified for defendant to the effect that they were present when Brown and Sharp roped the yearling, and that it was not a Diamond T yearling, as claimed by the State, but a V bar yearling, as claimed by defendant. To overturn the force of this testimony, the State showed by the witness Cude that he took dinner with these two witnesses at a point some miles distant from where the animal was roped at the time these witnesses claimed they were present at the roping. This testimony of Melvin Cude was very material as destroying the effect of defendant's two witnesses. Subsequent to the trial, witness Cude made an affidavit that he was mistaken as to the day on which he took dinner with said witnesses Vinton and Saltillo; that he did not take dinner with them on the day of the theft, but on a different day. This was in the nature of newly discovered evidence; and, concede that the affidavit of Cude is true, showed very clearly that false testimony was used against appellant on a very material issue in his case. This, though unintentional and innocently done, was none the less effective in destroying material evidence for appellant.

There are some other assignments, not necessary to be discussed, but for the errors pointed out the judgment is reversed and the cause remanded.

*Reversed and remanded.*

HENDERSON, JUDGE.—While I agree to the disposition of the case made by the majority of the court, I do not concur in that portion of the opinion in regard to the right of severance. It appears from the action of the learned judge who tried the case that he construed article 709 as vesting a discretion in the district attorney to dismiss a prosecution as to one or more defendants jointly indicted with others, and so escape the effect of a motion to sever. It would also appear that this view is upheld and adopted by a majority of this court. I can not agree to this construction. Article 707 guarantees to a defendant the right to sever from his codefendant, and to have him tried first, in order to secure his testimony; said right being based on an affidavit that affiant verily believes there is not sufficient evidence against the codefendant whose evidence is desired to secure his conviction. Article 709 simply authorizes the attorney representing the State to dismiss a prosecution as to one or more defendants jointly indicted with others, on complying with article 37 (which requires that the motion be made in writing, and submitted to the judge), and the person so discharged may be introduced as a witness by either party. This latter article is absolutely independent of article 707, and I do not think it was intended to qualify it, or to take from a defendant any of the rights guaranteed him by the previous article in regard to severance. I certainly take it that article 707, by its express provisions, secures to a defendant the full benefit of a codefendant's testimony, unhampered by the cloud of a

prosecution that may be afterwards invoked. If the construction placed on these articles by a majority of this court is the correct one, then, in answer to a motion for severance under article 707, the State can simply dismiss the case against the codefendant for the time being, and thus permit him to testify for the defendant then being tried with the sword of Damocles hanging over him while he is giving his evidence. I take it that it will not be gainsaid, if article 707 is complied with, and the codefendant is first tried and acquitted, his testimony will be more valuable to his codefendant being tried than if the case is simply dismissed against the codefendant witness with the obligation on the part of the State not to afterwards prosecute him. But even this would be worth much more to a defendant being tried than the simple dismissal of a case against his codefendant in order to enable him to be a witness, with the understanding, however, that, as soon as the case being tried was disposed of, he would be rearrested and prosecuted. I do not deny that it is competent for the State to dismiss a prosecution pending as to one or more defendants jointly indicted with others, and, when such prosecution is dismissed, the person so discharged may be introduced as a witness by either party; but this is when the action of the court does not involve appellant's right to sever. In other words, whatever may be the construction placed on article 709, the right of severance guaranteed in article 707 can not be frustrated by a simple dismissal of the case against the codefendant. To test this matter, suppose that in answer to a motion to sever under article 707 the district attorney should, with the approval of the court, dismiss the case against the codefendant desired as a witness, and he should then be tendered as a witness to the codefendant being tried, if he should decline to testify, on the ground his evidence might inculpate himself, what power would exist in the court to compel him to testify? Evidently none, and consequently the mere dismissal of the case against him would serve no useful purpose. Suppose he did not claim his privilege, but proceeded to give his evidence in the case, what guarantee would the codefendant being tried have that, thus hampered and swearing, as it were, the halter around his neck, he would tell the truth, the whole truth, and nothing but the truth? It occurs to me that article 707 was intended to secure a right on behalf of a defendant who was indicted, either separately or jointly with others charged with the same crime; and that no other provision of the statute by judicial construction merely should be permitted to override and nullify the provisions of said article which were enacted for his benefit. If the construction placed on these articles by a majority of the court is sound, then the advantages guaranteed to a defendant, under the provisions of article 707 are overridden by article 709, and important rights guaranteed under the previous article are thus frustrated by a simple dismissal of the case against the codefendant. If this can be done at all, it must be with the distinct guarantee that the codefendant can not be again

prosecuted for the same offense which has been dismissed against him, and concerning which he is called upon to testify.

I notice that the opinion of the majority refers to King v. State, 35 Texas Criminal Reports, 472, and Shaw v. State, 39 Texas Criminal Reports, 174, in support of the views expressed. An inspection of said cases, far from sustaining the doctrine announced, is in contravention thereof. In both cases the right of severance is regarded as an absolute right when the provisions of the statute are compiled with. In the latter case we quote from the language of the court as follows: "It was no response to his motion that Wilson would be placed on the stand as a witness. He had a right to have Wilson tried first, and, if acquitted, he might use him as a witness unburdened in the pending prosecution against him; a right for him to testify as any other citizen, free from the particular charge, he being acquitted thereof, and not testifying under a cloud, and perhaps believing that, testifying strongly against appellant, it would go easier with him in this case." Entertaining the views herein expressed, I do not believe when a defendant makes a motion to sever, under article 707, he can be deprived of the advantages vouchsafed to him by said article by a simple dismissal of the case under article 709, with the reserved right on the part of the State to rearrest and prosecute the codefendant witness.